**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 08-cv-00283-REB-KLM

GERALD CESSAR,

      Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS, a Department of the State of
Colorado,
ARISTEDES ZAVARAS, in his individual capacity as the Executive Director of the
Colorado Department of Corrections,
RON LEYBA, in his individual capacity as the Warden of Arrowhead Correctional
Facility, and
JOHN DOES 1-10, in their individual capacities as employees of the Colorado
Department of Corrections,

      Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS AND DENYING PLAINTIFF'S MOTION
FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

---

**Blackburn, J.**

      The matters before me are (1) **Defendants' Combined Motion To Dismiss and
Memorandum Brief in Support of Motion To Dismiss Plaintiff's Amended
Complaint** [#40][1] filed January 20, 2009; and (2) **Plaintiff's Combined Motion To
Amend Complaint and Continue Trial** [#63] filed April 6, 2009.[2]  I grant the motion to
dismiss, deny the motion to amend the complaint, and deny the motion to continue the

---

      [1]  "[#40]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's electronic case filing and management system (CM/ECF). I use this
convention throughout this order.

      [2]  With the permission of the magistrate judge, the prior order of reference [#64], filed April 6,
2009, will be withdrawn so that I may deal with all pending motions together.

trial as moot.

## I.  JURISDICTION

I have subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

## II.  STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), I must

determine whether the allegations of the complaint are sufficient to state a claim within

the meaning of Fed.R.Civ.P. 8(a).  I must accept all well-pleaded allegations of the

complaint as true.  *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir.

2002).  "However, conclusory allegations or legal conclusions masquerading as factual

conclusions will not suffice to prevent a motion to dismiss."  *Fernandez-Montes v.

Allied Pilots Association*, 987 F.2d 278, 284 (5th Cir. 1993); *see also Ruiz v.

McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) ("All well-pleaded facts, as

distinguished from conclusory allegations, must be taken as true."), *cert. denied*, 123

S.Ct. 1908 (2003).  I review the amended complaint to determine whether it "'contains

enough facts to state a claim to relief that is plausible on its face.'"  *Ridge at Red Hawk,

L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp.

v. Twombly*, – U.S. –, 127 S.Ct. 1955, 1969, 1974, 167 L.Ed.2d 929 (2007)).  "Thus,

the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in

support of the pleaded claims is insufficient; the complaint must give the court reason to

believe that *this* plaintiff has a reasonable likelihood of mustering factual support for

*these* claims." ***Id.*** (emphases in original).[3]

## III.  ANALYSIS

Plaintiff has been incarcerated in the Colorado Department of Corrections ("CDOC") since 2004.  In his Amended Complaint, he asserts a single claim under the Eighth Amendment for deliberate indifference to his serious medical needs.[4]  Plaintiff suffers from severe arthritis and degeneration of the hip and shoulder.  He avers that from 2004 to 2006, he "was seen numerous times" for these conditions and "given numerous pain pills and cortisone shots by [C]DOC medical staff."  (Plf. Am. Compl. ¶ 20 at 6.)  Plaintiff was authorized for hip replacement surgery in March, 2006 (***id.*** ¶ 24 at

---

[3] ***Twombly*** rejected and supplanted the "no set of facts" language of ***Conley v. Gibson***, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  The Tenth Circuit recently clarified the meaning of the "plausibility" standard:

> "plausibility" in this context must refer to the scope of the allegations in a complaint:  if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.
>
> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them.  "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."

***Robbins v. Oklahoma***, 519 F.3d 1242, 1247-48 (10th Cir. 2008) (quoting ***Twombly***, 127 S.Ct. at 1974; internal citations and footnote omitted).

[4] Although plaintiff also intermittently invokes the Fourteenth Amendment as well, it is clear that the substance of his claim is governed by the standards of the Eighth Amendment.  ***See Albright v. Oliver***, 510 U.S. 266, 273, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994) (where a particular constitutional amendment provides the explicit textual source of constitutional protection, that provision governs over the more generalized protections of Fourteenth Amendment).  ***Cf. Lopez v. LeMaster***, 172 F.3d 756, 759 n. 2 (10th Cir. 1999) (pre-trial detainee's claim for deliberate indifference to serious medical needs arises under the Fourteenth Amendment, albeit measured by standards of the Eighth Amendment, which applies to prisoner claims).

6), but did not receive the surgery until February, 2007 (*id.* ¶ 27 at 7).

Plaintiff brings claims against Aristedes Zavaras, the Executive Director of CDOC, and Ron Leyba, warden of Arrowhead Correctional Center, as well as ten unnamed John Does who allegedly "were officials with decision making authority within the employment of the [CDOC] who had authority to decide when [CDOC] inmates would receive medical treatment, . . . and how quickly they would receive medical treatment." (*Id.* ¶ 7 at 3.)  Defendants move to dismiss the amended complaint for failure to state a claim on which relief may be granted.

Because plaintiff seeks money damages exclusively, all defendants have been sued, as they must be, in their individual capacities.  ***See Stidham v. Peace Officer Standards And Training,*** 265 F.3d 1144, 1156 (10th Cir. 2001) (citing ***Will v. Michigan Department of State Police***, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312,105 L.Ed.2d 45 (1989)).  To be held liable, a supervisor must have participated or acquiesced in the alleged constitutional deprivation.  ***Meade v. Grubbs***, 841 F.2d 1512, 1527 (10th Cir. 1988).  He cannot be sued solely on the basis of *respondeat superior*.  ***Worrell v. Henry***, 219 F.3d 1197, 1214 (10th Cir. 2000), ***cert. denied***, 121 S.Ct. 2521 (2001).

Yet that is precisely the nature of the allegations of the amended complaint. Plaintiff alleges that Zavaras "is responsible for appointing a medical director for the [CDOC]" (Plf. Am. Compl. ¶ 3 at 1), "appoints the chief medical officer and receives periodic reports from the chief medical officer" (*id.* ¶ 9 at 3), "personally signed off on

numerous [CDOC] administrative regulations" (*id.* ¶ 10 at 3),[5] "appoints the deputy

director of clinical services for the CDOC and receives periodic reports from this person"

(*id.* ¶ 11 at 4), and makes "decisions on the type and amount of health care to be

provided to inmates, such as [plaintiff]" (*id.* ¶ 11 at 4).  Similarly, Leyba is alleged to be

"sued in his individual capacity as the warden of Arrowhead Correctional Center" who is

"directly responsible for the safety and well-being of resident inmates" (*id.* ¶ 5 at 2), in

addition to "follow[ing] Executive Director Zavaras's decisions on the type and amount

of health care to be provided to inmates (*id.* ¶ 13 at 5).  He also is alleged to be a

"member[] of a committee at Arrowhead Correctional Center that decides which inmate

will receive what type of medical care, and when that care will be received."  (*Id.* ¶ 13 at

5.)  The John Doe defendants are generally described as "officials with decision making

authority within the employment of the [CDOC] who had authority to decide when

[CDOC] inmates would receive medical treatment, . . . and how quickly they would

receive medical treatment" (*id.* ¶ 7 at 3). More specifically, John Doe 1 is the CDOC

Chief Medical Officer, "a medical doctor who is responsible for monitoring and directing

the total process by which health care services are provided to offenders" (*id.* ¶ 8 at 3),

John Doe 2 is the Deputy Director of Clinical Services at CDOC, who is "responsible for

providing system wide medical, nursing, psychiatric . . . and treatment services to all

offenders" (*id.* ¶ 11 at 4), and John Doe 3 is the Health Services Administrator at

Arrowhead Correctional Center, who is "responsible for managing day to day operations

---

[5] Although this paragraph goes on to state that Zavaras "is intimately involved in the day to day decision making regarding medical . . ." (Plf. Am. Compl. ¶ 10 at 3), the remainder of the sentence and paragraph do not continue on the following page of the document.

of their [sic] assigned clinic" (***id.*** ¶ 12 at 4).

None of these allegations, either singly or together, establish that either of the named defendants or any of the John Doe defendants was personally involved in or actually aware of any violation of plaintiff's Eighth Amendment rights. The amended complaint evinces a complete lack of any factual detail to support that critical conclusion. At best, the amended complaint could be read to suggest that defendants should or must have known about plaintiff's complaints because they make decisions regarding CDOC health care policy, manage the provision of services at Arrowhead Correctional Center, receive quarterly reports concerning the provision of care to inmates, and/or generally have ultimate responsibility for the inmates under their care and supervision. Even given that generous interpretation, however, the amended complaint fails to state a claim under the Eighth Amendment, since an allegation that supervisors "should have known" of allegedly unconstitutional conditions or practices, and thus were negligent or even grossly negligent, is insufficient to state a constitutional claim under section 1983. ***Woodward v. City of Worland***, 977 F.2d 1392, 1399 (10th Cir. 1992), ***cert. denied***, 113 S.Ct. 3038 (1993).[6]

Yet even if personal participation were adequately plead, the factual allegations

---

[6] The closest the amended complaint comes to alleging actual knowledge or personal participation is its allegation that "[d]efendants were aware of [plaintiff's] medical needs based on frequent kites from [plaintiff] regarding same, as well as medical examinations of [plaintiff] performed by [CDOC] employees or agents." (Plf. Am. Compl. ¶ 23 at 6.) However, the vague allusion to "defendants" is insufficient to provide fair notice, as required by Fed.R.Civ.P. 8(a), that any particular defendant had actual knowledge of plaintiff's complaints. ***See Robbins v. Oklahoma***, 519 F.3d 1242, 12450 (10th Cir. 2008). ("[T]he burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants. Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.").

of the amended complaint are insufficient to show deliberate indifference by defendants. Indeed, the amended complaint acknowledges that over a two-year period he "was seen numerous times" for his hip and shoulder pain and "was given numerous pain pills and cortisone shots by [CDOC] medical staff."  (Plf. Am. Compl. ¶ 20 at 6.)  To the extent the amended complaint can be read to allege that hip replacement surgery should have been undertaken prior to the time it was initially authorized in 2006, such an allegation does not state an Eighth Amendment deliberate indifference claim.  *See Perkins v. Kansas Department of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999) (mere disagreement with diagnosis or prescribed course of treatment does not make out a constitutional violation). Plaintiff has alleged that the eleven-month delay between the time he was first authorized to receive a hip replacement in March, 2006, and the time he underwent surgery in February, 2007, caused him substantial harm.  Although these allegations set forth the objective component of a deliberate indifference claim, the amended complaint still lacks appropriately detailed factual allegations to substantiate the concomitant subjective component of such a claim, i.e., that any defendant actually knew of but yet disregarded an excessive risk to plaintiff's health. *See Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006), *abrogated on other grounds as recognized in Ajaj v. United States*, 293 Fed. Appx. 575, 581 (10th Cir. Sept. 15, 2008), *cert. denied*, – S.Ct. –, 2009 WL 290402 (March 9, 2009).

For these reasons, I find and conclude that the amended complaint fails to allege a claim for relief for deliberate indifference to serious medical needs under the Eighth Amendment.  My determination in this regard pretermits consideration of defendants'

alternative arguments based on limitations and qualified immunity grounds.[7]

This leaves only the question whether plaintiff should be allowed to yet again amend his complaint.[8]  The deadline for amendment of pleadings was September 11, 2008.  Although plaintiff filed a motion to extend the deadline, that motion was stricken for failure to comply with the conference requirement of D.C.COLO.LCivR 71.A and was never refiled.  Thus, amendment may be granted only if plaintiff first satisfies the requirements of Fed.R.Civ.P. 16(b) by demonstrating good cause to modify the deadline:

> Properly construed, good cause means that the scheduling deadlines cannot be met despite a party's diligent efforts.  In other words, this court may modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension. Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Pumpco, Inc. v. Schenker International, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (citations and internal quotation marks omitted).  Only if plaintiff can meet this burden should the court proceed to consider whether amendment should be allowed under the more liberal standards of Fed.R.Civ.P. 15(a).  *See id.*

It is abundantly clear from the record in this case that plaintiff has not and cannot demonstrate good cause for his failure to timely seek modification of the scheduling order deadline.  Plaintiff has been complaining since the inception of this lawsuit that

---

[7] Moreover, because all these same deficiencies apply equally to plaintiff's claims against the John Doe defendants, there is no basis for allowing the claims against them to continue either. Accordingly, I will order those claims dismissed as well.

[8] The motion to amend the complaint does not include the certification of conferral required by D.C.COLO.LCivR 7.1A, and is subject to being stricken on that basis alone.  However, because the motion fails substantively as well, I will address it on the merits.

defendants failed to provide him with adequate discovery to allow him to substantiate his claims.  Assuming *arguendo* that his oft-repeated but unsubstantiated representations in various pleadings are true,[9] they still amply demonstrate a lack of diligence on his part in the prosecution of his claims.  For example, plaintiff avers that his counsel sent Open Records Act requests to CDOC in April and June, 2008, and again in January, 2009, without receiving responses.  He further complains that although defendants had agreed to identify the John Doe defendants in July, 2008, they did not do so until January, 2009.  Yet not until now, months past the deadline previously established for amendment of the pleadings and within one month of the scheduled trial in this case, has plaintiff done anything to formally seek the aid of the court in remedying these alleged abuses.

Moreover, although the original discovery deadline of January 23, 2009, was set in July, 2008, plaintiff did not serve discovery requests on defendants until December 19, 2008 (*see* Plf. Response ¶ 9 at 4 [#57], filed March 18, 2009), nor did he notice defendants, or anyone else, for deposition until January 3 and 4, 2009.  Although the discovery deadline was later amended to February 25, 2009, and although plaintiff filed a request for an extension of the deadline to file a response to defendants' motion to dismiss on that same day, outlining the same complaints about defendants' alleged stonewalling in discovery that are brought forward in his motion to amend the complaint,

---

[9]  Recent exhibits produced by defendants in response to the motion to amend suggest that plaintiff's claims are untrue.  More pointedly, I am deeply troubled by the representations regarding plaintiff's counsel's own litigation conduct set forth in **Defendants' Response to "Plaintiff's Combined Motion To Amend Complaint and Continue Trial"** [#67], filed April 9, 2009.  If these representations are, in fac,t true, counsel has not only been untruthful in his statements to this court, but also unprofessional (and potentially unethical) in his dealings with defendants and their counsel.  It should go without saying that such tactics are intolerable in this court or any other in this district.

he never sought to extend the deadline or asked for the court's assistance by way of motion to compel or otherwise.  Plaintiff was unable to actually depose defendants until March 6, at which time he claims they gave evasive and inadequate answers.  Again, plaintiff never alerted the court to any of his these alleged frustrated discovery attempts.

Finally, plaintiff claims he learned the names of the various medical personnel he seeks to add in the second amended complaint during the deposition of Delores Montoya on March 13, 2009.  Yet he waited nearly three and a half weeks to seek leave to amend, despite the fact that the proposed amendment adds little of substance to his Eighth Amendment claim and that the added claims for alleged discovery abuses clearly have been in his contemplation for months.[10]

All of which substantiates my conclusion that plaintiff has not and cannot establish that he was sufficiently diligent in his prosecution of this case to make the requisite showing of good cause to modify the duly entered scheduling order.  His undue delay in seeking the court's assistance to rectify the alleged discovery misconduct of which he claims to be a victim is simply too little, too late.  Given the procedural history of the case, I cannot escape the conclusion that it is plaintiff's own dilatory conduct in discovery that has created the dilemma in which he finds himself.[11]  I

---

[10]  These same complaints have been reiterated numerous times, almost verbatim, in multiple motions, including in **Plaintiff's Combined Response to Motion To Dismis [sic] and Motion for Default Judgment** [#57], filed March 18, 2009.  Aside from the substantive infirmities noted herein, the motion for default judgment is improperly filed under the Local Rules of this District.  **See D.C.COLO.LCivR.** 7.1C ("A motion shall not be included in a response or reply to the original motion.  A motion shall be made in a separate paper.").  I strike that portion of the paper on that basis.

[11]  Plaintiff's lack of diligence is further evidenced by his refusal to participate in the preparation of the Final Pretrial Order and by his failure to timely submit a confidential settlement statement, which necessitated cancellation of the previously scheduled settlement conference.  (**See Courtroom Minutes/Minute Order** ¶ 2 & 4 at 1 [#65], filed April 6, 2009.)

am neither required nor inclined at this belated point in the process to save him from his own lack of diligence.

Yet even if plaintiff were able to show good cause under Rule 16(b), I still would not exercise my discretion to permit amendment under the more liberal standards of Rule 15(a). Although Rule 15(a) provides that leave to amend "shall be freely given when justice so requires," I have discretion to decline leave where, *inter alia*, amendment would be futile or where there has been undue delay. ***Frank v. U.S. West, Inc.***, 3 F.3d 1357, 1365 (10th Cir. 1993). Both those considerations are applicable here.

Plaintiff seeks to add two additional state law claims by way of amendment, one for violation of the Colorado Open Records Act and Colorado Criminal Justice Records Act, and a second for civil conspiracy. Both are based on alleged discovery abuses on the part of defendants. However, as described above in detail, plaintiff has not diligently pursued these claims. Given his undue delay in bringing these matters to the attention of the court, I would not exercise my discretion under Rule 15(a) to permit him to add these new state law claims in any event.[12]

As for the other proposed amendments, they would be futile. Plaintiff seeks to add ten more named defendants, including the attorney for the government in this case, various doctors who were involved in plaintiff's treatment, and the employee in charge of scheduling plaintiff's surgery. Defendants' counsel clearly is entitled to absolute immunity from plaintiff's purported civil conspiracy claim against him for his conduct in

---

[12] Even if these claims were permitted, because plaintiff's constitutional claim would not survive dismissal even as amended, I would decline to exercise jurisdiction over the state law claims . 28 U.S.C. § 1367(c)(3). ***See West v. Ortiz,*** 2008 WL 544735 at *12 (D. Colo. Feb. 26, 2008) (Blackburn, J.).

this case.  *See Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1373 (10th Cir.

1991), *cert. denied*, 112 S.Ct. 1160 (1992); *Pfeiffer v. Hartford Fire Insurance Co.*,

929 F.2d 1484, 1489 (10th Cir. 1991).  In addition, a number of the remaining proposed

new defendants, including the original defendants, Zavaras and Leyba, are sued in their

official capacities only.  However, because plaintiff continues to request only monetary

damages in this lawsuit, his claims against these individuals in their official capacities

are barred by the Eleventh Amendment.[13]  *Will v. Michigan Department of State*

*Police*, 491 U.S. 58, 71 & n.10, 109 S.Ct. 2304, 2312 & n.10, 105 L.Ed.2d 45 (1989).[14]

Moreover, although the proposed amended complaint attempts to flesh out

plaintiff's Eighth Amendment claim with the names and roles of the various medical

personnel involved in his care, it still does not state a claim against any of these

individuals.  With respect to the two doctors and the scheduler who were allegedly

involved in plaintiff's treatment, the proposed amended complaint contains no

allegations to substantiate the critical conclusion that any of these individuals had the

type of culpable mental state required to prove the subjective component of a deliberate

indifference claim.  At best, plaintiff has alleged negligence in the provision of his care

by these proposed parties, which is simply insufficient to support an Eighth Amendment

claim.  With respect to the doctors' and scheduler's respective supervisors, the

---

[13]  Nor does the proposed amended complaint contain any allegation of an official policy or custom that would make it appropriate to substitute the CDOC as defendant in this lawsuit.  *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

[14]  The Eleventh Amendment bars claims for damages against government entities that are arms or instrumentalities of the state.  *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000).  "[T]he DOC is an arm of the state and should be entitled to absolute [Eleventh Amendment] immunity." *Eastwood v. Department of Corrections of State of Oklahoma*, 846 F.2d 627, 631 (10th Cir. 1988).

proposed amended complaint contains no factual allegation indicating that these individuals personally participated in plaintiff's medical treatment.  As noted above, such allegations are essential to a properly plead an Eighth Amendment deliberate indifference claim.

For these reasons, I find and conclude that plaintiff has failed to carry his burden to demonstrate that amendment of the complaint should be permitted under any applicable standard.  Accordingly, his motion to amend must be denied.

**THEREFORE, IT IS ORDERED** as follows:

1.  That **Defendants' Combined Motion To Dismiss and Memorandum Brief in Support of Motion To Dismiss Plaintiff's Amended Complaint** [#40] filed January 20, 2009, is **GRANTED**;

2.  That the **Order of Reference** [#64] filed April 6, 2009, is **WITHDRAWN** with the consent of the magistrate judge;

3.  That  **Plaintiff's Combined Motion To Amend Complaint and Continue Trial** [#63] filed April 6, 2009 is **DENIED IN PART** and **DENIED AS MOOT IN PART**:

a.  That the motion to amend is **DENIED** insofar as it seeks leave to amend the complaint; and

b.  That the motion to continue the trial is **DENIED AS MOOT**;

4.  That the putative motion for default judgment contained within **Plaintiff's Combined Response to Motion To Dismis [sic] and Motion for Default Judgment** [#57] filed March 18, 2009, is **STRICKEN**;

5.  That **Defendants' Combined Motion for Summary Judgment and**

**Memorandum Brief in Support of Motion for Summary Judgment** [#58] filed March 25, 2009, is **DENIED AS MOOT**;

6.  That plaintiff's Eighth Amendment claim against defendants asserted in the **Amended Complaint** [#17] filed July 2, 2008, is **DISMISSED WITH PREJUDICE**;

7.  That judgment **SHALL ENTER** on behalf of defendants, Aristedes Zavaras, in his individual capacity as the Executive Director of the Colorado Department of Corrections, Ron Leyba, in his individual capacity as the Warden of Arrowhead Correctional Facility, and John Does 1-10, in their individual capacities as employees of the Colorado Department of Corrections, and against plaintiff, Gerald Cessar, as to all claims for relief and causes of action;

8.  That the Trial Preparation Conference currently scheduled for Friday, April 17, 2009, at 11:30 a.m., and the trial currently scheduled to commence on Monday, May 4, 2009, are **VACATED**; and

9.  That defendants are **AWARDED** their costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated April 13, 2009, at Denver, Colorado.

**BY THE COURT**:

Bob Blackburn

Robert E. Blackburn
United States District Judge